UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FLAVIANO QUINTERO,

                                 Petitioner,            10 Civ. 8709 (CS)(LMS)

          - against -                                   **REPORT AND**
                                                        **RECOMMENDATION**

PHILIP HEATH, Superintendent, Sing Sing
Correctional Facility,

                                 Respondent.

**TO: THE HONORABLE CATHY SEIBEL, U.S.D.J.**

Petitioner Flaviano Quintero, proceeding pro se, seeks a writ of habeas corpus pursuant

to 28 U.S.C. § 2254 (the "Petition") to challenge his conviction for predatory sexual assault

(N.Y. Penal Law § 130.95(2)) and rape in the first degree (N.Y. Penal Law § 130.35(1)).  See

Petition.  On September 9, 2008, following his guilty plea, Petitioner was sentenced to an

indeterminate term of twenty years to life of imprisonment and twenty years of post-release

supervision on the count of predatory sexual assault, and to a determinate term of twenty years'

imprisonment and twenty years of post-release supervision on the count of rape in the first

degree.  See Doc. # 5, Respondent's Affidavit in Answer to a Petition for a Writ of Habeas

Corpus, Ex. 12[1] (Sentencing Hearing Transcript, herein, "S") at 10 - 11 (Feb. 2, 2011).  The

sentences are to run concurrently.  S: 11.

---

[1]In this Report and Recommendation, where citation is made to a "Resp't Ex.," I am
referring to the exhibits which accompany Doc. #5, Respondent's Affidavit in Answer to a
Petition for a Writ of Habeas Corpus (Feb. 2, 2011).

Petitioner appealed the judgment to the New York State Appellate Division, Second Department.  See Brief for Appellant, People v. Quintero, 898 N.Y.S.2d 489 (N.Y. App. Div. 2010) (No. 2008-08636) (herein, "Brief for Appellant").  On appeal, Petitioner argued that his conviction should be vacated and a new hearing ordered because the trial court erred in denying his motion to suppress incriminating statements made to law enforcement.  See id. at 16.  On April 13, 2010, the Appellate Division affirmed the judgment against Petitioner.  People v. Quintero, 898 N.Y.S.2d 489 (N.Y. App. Div. 2010).   Petitioner's ensuing application for leave to appeal the Appellate Division's Order to the New York Court of Appeals was denied on September 2, 2010.  People v. Quintero, 935 N.E.2d 824 (N.Y. 2010).

On October 29, 2010, Petitioner filed his petition for writ of habeas corpus.  Pet. at 6. Petitioner argues that habeas relief should be granted because the trial court should have suppressed statements made by Petitioner to police on December 29, 2007 and January 3, 2008, because those statements were not truly spontaneous due to the allegedly suggestive settings. Pet. at 4.  I conclude, and I respectfully recommend that Your Honor should conclude, that the instant Petition should be dismissed.

## BACKGROUND

### I. The Crimes and the Investigation

On November 28, 2007, in the village of Pawling, New York, Petitioner broke into the residence of H.F.[2]  Resp't Ex. 10 (Plea Allocution Transcript, herein, "P.A.") at 15.  At approximately 12:20 A.M., Petitioner knocked H.F. to the ground, placed his hands around her throat, and raped her.  Id.

---

[2]Under New York Civil Rights Law § 50(b), the identities of the victims of certain sexual offenses are kept confidential.  The victims are therefore identified herein by their initials.

On or about December 6, 2007, in the village of Pawling, New York, at approximately 8:15 P.M., Petitioner grabbed K.R.F. around the neck from behind while she was outside her home.  P.A.: 16.  He then dragged her inside the house, where he raped her.  Id.

In December 2007, Dutchess County Detective Daren Cummings was assigned to the investigation of these rapes.  Tr. of Huntley Hearing,[3] People v. Quintero, Ind. No. 0727/08, at 8 (Dutchess Cty. Ct. June 15, 2008) (herein, "H").  Cummings came to suspect a man named Flaviano Quintero, who was then in the custody of Michigan State Police, and so Cummings flew to Michigan with Dutchess County Detective Tom Cuddeback to retrieve Quintero.  H: 10.  Prior to Petitioner's extradition to New York, Michigan police told Cummings that Petitioner had already been advised of his Miranda rights and had invoked his right to counsel.  H: 24.

On December 29, 2007, Cummings and Cuddeback boarded a commercial plane from Flint, Michigan, to New York City with Petitioner, with a layover in Detroit.  H: 11.  En route to Detroit, Petitioner was seated next to Cummings.  H:12.  Petitioner asked the detective if he was being taken to a Mexican jail or a New York jail, and Cummings responded, "New York."  Id.  After a brief pause, Petitioner then stated that "he knew [Detective Cummings] would catch him, he saw himself on TV for what he did to the girls,[4] for [Detective Cummings] to tell them that he was sorry, that he was sorry to [Detective Cummings] as well . . . that he knew he would also be in trouble for . . . the computers he took from the two ladies."  H: 13.  Petitioner asked Cummings to give back the computers he had stolen from his victims.  Id.  No further

_____

[3]In New York state courts a so-called Huntley hearing (People v. Huntley, 204 N.E.2d 179 (N.Y. 1965)) is conducted to determine the admissibility of a defendant's out of court statement.

[4]Detective Cummings testified that there had been media coverage of Petitioner's crimes and his ensuing flight from New York. H:14.

conversation between Petitioner and police took place during the trip.  H: 15.

When Petitioner and the detectives arrived in New York, the detectives had been traveling for over twenty-four hours, and so postponed Petitioner's intake processing to a more convenient time on January 3, 2008.  H: 16.  On that date, Petitioner was brought from the Dutchess County Jail to the detective bureau for his photographs and fingerprints to be taken and his pedigree information to be obtained.  H: 17.  However, Detective Cummings was initially unable to process Petitioner, at first because Cummings was unable to find another detective to assist him as required by department policy, and then because of a problem with the computer system.  H: 30 - 31.  At the beginning of what became a ninety minute wait, before he realized that the delay would be significant, Cummings kept Petitioner near his desk, later transferring him to a holding cell when Cummings realized Petitioner would not be processed promptly.  H: 17 - 18.

Petitioner's preliminary hearing on the charges against him was also scheduled for January 3, 2008.  H: 34.  The People's evidence on those charges included a white MacBook computer[5] which Cummings had placed on his desk, "ready to go to the preliminary hearing," close to where Petitioner had been brought to wait.  H: 18.  While awaiting processing, Petitioner told Cummings he thought the computer on Cummings's desk was the one Petitioner took from "the first house" that he had given to his brother, Gumaro.[6]  Id.  Petitioner then asked that

---

[5]Counts 7 and 8 of the Indictment filed against Petitioner on January 17, 2008, both of which were dismissed pursuant to Petitioner's guilty plea, charged him with criminal possession of stolen property–two laptops, one of which allegedly belonged to K.R.F.  Resp't Ex. 2 (Indictment) at 4 - 5; P.A. : 17 - 18.

[6]The version of this statement given in the People's "Huntley Notice" is slightly more detailed: "I think that is the computer I steal from the first house.  I give that to Gumaro.  You give that back to the lady, yes?"  See Resp't Ex. 4 (Huntley Notice).  A Huntley Notice is

Cummings "give it back," ostensibly to the rightful owner.  H: 19.  Cummings was eventually able to process Petitioner.

## II.  Procedural History

Petitioner was indicted on January 17, 2008, by Dutchess County Indictment Number 7/2008, on the following counts: two counts of Predatory Sexual Assault (N.Y. Penal Law § 130.95(2)) (Counts 1 and 2); two counts of Rape in the First Degree (N.Y. Penal Law § 130.35(1)) (Counts 3 and 4); two counts of Burglary in the Second Degree, as a Sexually Motivated Felony (N.Y. Penal Law §§ 140.25(2), 130.91(1)) (Counts 5 and 6); and two counts of Criminal Possession of Stolen Property in the Fifth Degree (N.Y. Penal Law § 165.40) (Counts 7 and 8).  Resp't Ex. 2.

After the People served Petitioner with a Huntley Notice, Resp't Ex. 4, indicating their desire to use Petitioner's December 29, 2007, and January 3, 2008, statements to police against him at trial, Petitioner made an omnibus pretrial motion.[7]  Resp't Ex. 5 (Omnibus Motion, herein, "O.M.").  As part of this Omnibus Motion, Petitioner sought dismissal of Counts 1 and 2 on the grounds that the statute in question was unconstitutionally vague and violated the principles of double jeopardy.  O.M.: 1.  Petitioner also argued that all statements referenced in the Huntley Notice should be suppressed because they had been obtained in violation of Petitioner's rights, including his right against self-incrimination and his right to counsel under

_____

required to be served on a defendant pursuant to N.Y. Crim. Proc. Law § 710.30 when the prosecution intends to offer into evidence a defendant's statement.

[7]In the Huntley Notice, the People indicated that they wished to use a third set of incriminating statements made by Petitioner to law enforcement, but those statements were not included in the record provided to this Court.  See Resp't Ex. 4 at 1.  At the Huntley Hearing, however, Assistant District Attorney Hawlk stated that the People no longer intended to use this third set of statements at trial.  H: 2.

the New York and United States Constitutions.  O.M.: 18 - 19.  In the alternative, Petitioner

requested a <u>Huntley</u> hearing to determine the statements' admissibility.  <u>Id.</u> at 19.

 In an April 28, 2008, Decision and Order, County Judge Dolan addressed the various

claims contained in Petitioner's Omnibus Motion, and dismissed Count 1 of the Indictment.

Resp't Ex. 8 (Decision and Order) at 2 - 4.  Judge Dolan also granted Petitioner's request for a

<u>Huntley</u> hearing, which was held on June 16, 2008.  <u>Id.</u> at 6; H: 1.

 At the hearing, after Detective Cummings's testimony, Judge Dolan denied Petitioner's

motion to suppress his December 29 and January 3 statements in its entirety.  H: 36.  He

evaluated each set of statements in turn.  As to the statements made by Petitioner to Cummings

en route to New York on December 29, Judge Dolan found that

> Uncontroverted testimony is that these statements [made by
> Petitioner on December 29]. . . were not in response to any
> questions asked and that the detective did not do or say anything
> that could be characterized as inducing the defendant to speak in
> any way, shape, or form.  The defendant was not interrogated at all
> on his return flight from Michigan.

H: 34.  As to the statements made by Petitioner to Cummings while waiting to be processed on

January 3, Judge Dolan found that "this statement made by the defendant was not in response to

any question.  There was no act by Cummings or any other officer that could reasonably be

inferred as inducing the statements attributed to this defendant."  H: 36.  The judge concluded

that as a matter of law both sets of statements were spontaneously made, and that "nothing the

officer did on either occasion could be construed as inducing the defendant to make statements

against his own will."  H: 36 - 37.  He therefore found that the statements were admissible at

trial.

6

On August 6, 2008, Petitioner pled guilty to Counts 2 and 3 of the indictment.[8]  P.A.: 17 -

18.  On September 9, 2008, Petitioner was sentenced to twenty years to life on Count 2, and

twenty years determinate on Count 3, concurrent with Count 2, with twenty years of post-release

supervision.  S: 10 - 11.

On December 7, 2009, Petitioner directly appealed his conviction to the Appellate

Division, Second Department.  See Brief for Appellant.  Petitioner's claim of error was restricted

to Judge Dolan's determination that Petitioner's January 3, 2008, statements to Detective

Cummings were admissible.[9]  Id. at 16.  He conceded that his December 29, 2007, statements

_____

[8]As part of his guilty plea, Petitioner executed a waiver of appellate rights at sentencing.
See P.A.: 12 - 13, S: 11 - 12.

[9]Petitioner first argued that the waiver of appellate rights he had executed at sentencing
should not preclude him from raising a claim of error by the suppression court under New York
State law.  See Brief for Appellant at 8 - 9, citing People v. Vina, 367 N.Y.S.2d 268 (N.Y. App.
Div. 1975) ("although we agree with respondent that, except in rare circumstances not here
presented, a valid guilty plea generally waives all nonjurisdictional defects underlying the
conviction, we believe error was committed in the denial of the suppression motion; and review
of such order of denial is explicitly not waived by a guilty plea.  (CPL 710.70)").  N.Y. Crim.
Proc. Law §710.70(2) states that "an order finally denying a motion to suppress evidence may be
reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that
such judgment is entered upon a plea of guilty."  Petitioner also argued that because the trial
court had made insufficient inquiry into the appellate waiver, the waiver could not be considered
knowing and voluntary, and was therefore unenforceable.  Brief for Appellant at 9 - 10.
Respondent's appellate brief argued that Petitioner's general waiver of his right to appeal was
knowing and voluntary and included waiver of his right to appeal the denial of the suppression
motion.  See Respondent's Brief at 12 - 14, People v. Quintero, 898 N.Y.S.2d 489 (N.Y. App.
Div. 2010) (No. 2008-0836).   However, the Second Department made no mention of waiver in
its decision affirming Petitioner's conviction, and the suppression court's ruling, on the merits.
See People v. Quintero, 898 N.Y.S.2d 489 (N.Y. App. Div. 2010).
Had the Appellate Division relied upon the appellate waiver in rejecting Petitioner's
direct appeal, that ruling might have presented an independent and adequate state law ground
precluding habeas review.  See Harris v. Reed, 489 U.S. 255, 260 (1989).  But "the mere
existence of a basis for a state procedural bar does not deprive this Court of jurisdiction; the state
court must actually have relied on the procedural bar as an independent basis for its disposition
of the case." Caldwell v. Mississippi, 472 U.S. 320, 327 (1985).  Since the state courts
implicitly rejected this procedural argument by reaching the merits of Petitioner's claims on

were "spontaneous and uncoerced" and that Judge Dolan had correctly ruled them admissible. Id. at 11.  However, Petitioner argued that Cummings's "sole purpose" in placing Petitioner at his desk to wait prior to processing on January 3, 2008, was to "elicit a statement in violation of his constitutional rights" because Cummings could have installed Petitioner in a holding cell to wait from the beginning, but had chosen not to.  Id. at 14 - 15.  This allegedly coercive practice "violated Petitioner's Sixth and Fourteenth Amendment Rights and Article I, Section 6 of the New York State Constitution."   Id. at 16.

On April 13, 2010, the Appellate Division, Second Department, affirmed the judgment of conviction. People v. Quintero,  898 N.Y.S.2d 489 (N.Y. App. Div. 2010).  The Appellate Division held that

> Contrary to the defendant's contention, the record supports the hearing court's conclusion that his statement regarding a laptop computer was spontaneous and not the result of the functional equivalent of interrogation (see People v. Stockdale, 270 A.D.2d 294, 294-295; People v. Betancourt, 173 A.D.2d 481, 482; cf. People v. Ferro, 63 N.Y.2d 316, 322-323, cert denied 472 U.S. 1007).

Id.  Petitioner then sought leave to appeal to the Court of Appeals, but his application was denied on September 2, 2010.  People v. Quintero, 935 N.E.2d 824 (N.Y. 2010).  On October 29, 2010, Petitioner timely filed the instant Petition and has no other petitions or appeals pending. Pet. at 5 - 6.

## DISCUSSION

### I. Standard of Review

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614,

---

direct appeal, those courts did not "actually . . . rel[y]" on this potential procedural bar.  The appellate waiver thus does not prevent this Court from reaching the merits of Petitioner's claims.

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas

corpus from a federal district court, a petitioner must fully and carefully comply with the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254.  Under the AEDPA, all state remedies must be exhausted before a federal court may

consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see

also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious

federal review, "[s]tates should have the first opportunity to address and correct alleged

violations of [a] state prisoner's federal rights."  See Coleman v. Thompson, 501 U.S. 722, 731

(1991); see also Daye v. Attorney Gen. of the State of New York, 696 F.2d 186, 190 - 91 (2d

Cir. 1982).  The exhaustion requirement of the federal habeas corpus statute is set forth in 28

U.S.C. § 2254(b)(1), (c):

> (b)(1) An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall not
> be granted unless it appears that–
>
>> (A) the applicant has exhausted the remedies available in the courts
>> of the State; or
>>
>> (B)(i) there is an absence of available State corrective process; or
>>
>>> (ii) circumstances exist that render such process ineffective to
>>> protect the rights of the applicant.  . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies
> available in the courts of the State, within the meaning of this section,
> if he has the right under the law of the State to raise, by any available
> procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion

doctrine has been satisfied.  See Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981).  First, the

9

petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. Picard v. Connor, 404 U.S. at 275 - 76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'" Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." Daye, 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. Klein, 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. See Daye, 696 F.2d at 194; Irving v. Reid, 624 F. Supp. 787, 788, n. 3 (S.D.N.Y. 1985).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. Klein, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y. 1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state

methods for collaterally attacking his or her state conviction.  See Klein, 667 F.2d at 282; see also Johnson v. Metz, 609 F.2d 1052, 1055 - 56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10).  If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial.  Klein, 667 F.2d at 282 - 83.

Additionally, a habeas petitioner may be procedurally barred from presenting certain claims in a habeas petition filed in federal court if those claims were not considered on their merits by the state court due to a procedural failure by petitioner.  "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court.  28 U.S.C. § 2244(d)(1).  This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ."  28 U.S.C. § 2244(d)(2).  The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time."  Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).  After a petitioner has met these

11

threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

When a state court has decided a claim on the merits, the federal court must apply AEDPA's deferential standard of review. See Torres v. Berbary, 340 F.3d 63, 68 (2d Cir. 2003). Under AEDPA, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" Torres, 340 F.3d at 68 (quoting Williams v. Taylor, 529 U.S. 362, 412 - 13 (2000)).

"[A]n unreasonable application of clearly established Supreme Court precedent occurs when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Torres, 340 F.3d at 68 (internal quotation marks and citation omitted). While "it is clear that the question is whether the state court's application of clearly established federal law was objectively

12

unreasonable, the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is less clear.  However, it is well-established in [the Second Circuit] that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Id. at 68 - 69 (internal quotation marks and citations omitted).

Under the second prong of § 2254(d), the factual findings of state courts are presumed to be correct. Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II.  Petitioner's Claims for Habeas Relief

### A. *Petitioner's claims regarding his December 29, 2007, statements are procedurally barred*

In his Petition, Petitioner contends that the police placed him in a position "suggestive of allowing for a 'spontaneous statements' [sic] . . . on an airplane returning him to New York State from Michigan" on December 29, 2007. Pet. at 4.[10]   Respondent argues that Petitioner failed to raise this claim on direct appeal, and therefore this claim has been procedurally defaulted; Respondent also asserts that these statements were spontaneously made, so the claim is not only procedurally barred but is also meritless.  Resp't Mem. at 7 - 9.

Petitioner's claim is procedurally defaulted.  Although Petitioner presented this claim as

---

[10]Petitioner's Reply is unclear as to whether he wishes to withdraw the claim that his statements to Cummings on December 29, 2007, should have been deemed inadmissible. See Reply at 3 (brackets in original)( "Assuming that the statement of petitioner [was made spontaneously] during the extradition flight from Michigan to New York. . ."). Because Petitioner may have only intended to "assume for the sake of argument" that his statements on the plane were spontaneously made, and did not intend to withdraw that claim entirely, the Court will analyze this claim for the sake of completeness.

part of his Omnibus Motion, see O.M.: 19, his appeal to the Second Department explicitly

excludes Judge Dolan's determination that the December 29, 2007, statements to Cummings

were admissible from any claim of error.  See Brief for Appellant at 11 ("En route [to New

York], [Petitioner] made what the hearing court correctly determined was a spontaneous and

uncoerced statement regarding the rapes and the burglaries").  Since Petitioner failed to present

this claim on direct appeal to the highest state court, he has not satisfied the second prong of

Klein, and this claim has not been exhausted in a state court forum.[11]  Klein v. Harris, 667 F.2d

274, 282 (2d Cir. 1981).  Petitioner would now be unable to avail himself of state collateral

proceedings, as N. Y. Crim. Proc. Law § 440.10(2)(c) would prohibit him from raising this on-

the-record claim via collateral attack.  See N.Y. Crim. Proc. Law § 440.10(2) ("the court must

deny a motion to vacate a judgment when: . . . Although sufficient facts appear on the record of

the proceedings underlying the judgment to have permitted, upon appeal from such judgment,

adequate review of the ground or issue raised upon the motion, no such appellate review or

determination occurred owing to the defendant's. . . unjustifiable failure to raise such ground or

issue upon an appeal actually perfected by him"); Clark v. Perez, 510 F.3d 382, 392 (2d Cir.

2008) ("New York law provides . . . that a motion to vacate based on facts visible on the trial

record must be dismissed where the defendant unjustifiably failed to raise the issue on direct

appeal," citations omitted).  Petitioner would therefore be procedurally barred from raising this

---

[11]The record submitted to the Court does not include Petitioner's Application for Leave
to Appeal.  However, in his Petition, Petitioner states that the grounds raised on appeal to the
Court of Appeals were the same as the ones raised in his appeal to the Second Department.  Pet.
at 2.  In any event, the undersigned has obtained a copy of Petitioner's Application for Leave to
Appeal, dated April 29, 2010, from the New York State Court of Appeals.  A copy of that letter
is docketed herewith, and expressly states, "the leaveworthy issues upon which this application
are based are identical to those set forth under 'issues' in Appellant's brief [filed in the Appellate
Division]."

claim in any state forum.  As noted in Section I above, under Coleman v. Thompson, this Court cannot consider such procedurally defaulted claims unless Petitioner can show cause for the default and prejudice, or that "failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  Petitioner has made no such showing here. Therefore Petitioner's claim that the trial court erred in deeming his December 29, 2007, statements spontaneously made and thus admissible is procedurally defaulted, and should be dismissed.

**B.  *Petitioner's claim that his statement on January 3, 2008, should have been suppressed as a violation of his Sixth Amendment right to counsel is meritless***

Petitioner also claims that his "Sixth and Fourteenth Amendment Rights were violated" in the "Detective office of the Dutchess County Sheriff," a reference, the Court assumes, to the statements made by Petitioner to Detective Cummings on January 3, 2008, described above.  Pet. at 4.  Petitioner alleges that he was placed "in a position suggestive of allowing for a 'spontaneous statements'" in that office.  Id.  Respondent argues that Petitioner's January 3, 2008, statements were properly found to be admissible because Cummings, in placing Petitioner within view of evidence against him, did nothing that was "reasonably likely to elicit an incriminating response."  Resp't Mem. at 9, quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980).  Respondent adds that this Court should presume the state court's factual findings to be correct.  Resp't Mem. at 10 (citations omitted).

Under the two-pronged test of Klein v. Harris, which requires (1) fair presentation of the legal and factual basis of a claim to (2) the highest state court, this claim has been exhausted and the Court may evaluate it on its merits.  667 F.2d 274, 282 (2d Cir. 1981).  First, Petitioner fairly presented the factual basis of this claim, since the January 3, 2008 conversation between

15

Petitioner and Cummings was described at the <u>Huntley</u> hearing, <u>see</u> H: 16 - 20; in Petitioner's appeal to the Second Department, <u>see</u> Appellant's Brief at 6 - 7; and in Petitioner's application for leave to appeal to the New York Court of Appeals via the record below. Petitioner also fairly presented the legal basis of this claim, since his appellate brief states that "Appellant's statement, that 'I think that's the computer I gave my brother from the first house,' should have been suppressed because it was obtained in violation of his right to counsel under both the Sixth and Fourteenth Amendments to the United States Constitution . . .". Appellant's Brief at 16. This sentence sufficed to alert the state court to the federal nature of Petitioner's claims, thus satisfying the standard for fair presentation to the appropriate state court. <u>See</u> <u>Klein</u>, 667 F.2d at 282 (the fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief). Second, because Petitioner's letter application to the Court of Appeals for leave to appeal incorporated via reference the same issues present in Petitioner's appellate brief, Petitioner's Sixth Amendment claim was also fairly presented to the highest state court, thus fulfilling the second requirement for exhaustion under <u>Klein</u>. <u>See</u> Defendant-Appellant's Letter Application for Leave to Appeal to the N.Y. Court of Appeals, <u>People v. Quintero</u>, 935 N.E.2d 824 (N.Y. 2010). Petitioner has therefore fully exhausted this claim.

This Court must apply AEDPA's deferential standard of review to this claim, even though neither the trial court, nor the intermediate state appellate court, nor the Court of Appeals explicitly addressed this alleged Sixth Amendment violation. The trial court focused entirely on whether the statements were voluntary and whether they resulted from any interrogation. "The statements made to Detective Daren Cummings by the [Petitioner] on each of those occasions

were spontaneous statements, not made in response to any questioning or interrogation." H: 36.

The Second Department's decision fails to cite either federal law or federal cases on the Sixth

Amendment right to counsel, and the Court of Appeals' denial of leave to appeal merely states

that "there is no question of law presented which ought to be reviewed by the Court of Appeals,"

without more.  See People v. Quintero, 935 N.E.2d 824 (N.Y. 2010).  Even when a state court

decision is merely a summary denial of a petitioner's claims, it is to be construed as an

"adjudication on the merits" triggering the deferential standard of review in 28 U.S.C. § 2254.

See Harrington v. Richter, 131 S.Ct. 770, 784 - 85 (2011)("When a federal claim has been

presented to a state court and the state court has denied relief, it may be presumed that the state

court adjudicated the claim on the merits in the absence of any indication or state-law procedural

principles to the contrary").  No accompanying explanation or statement of reasons is necessary.

Id.  Therefore, even though the state courts made no explicit reference to the Sixth Amendment,

the Court is bound to apply the deferential standard of review in §2254(d) to this claim: the

petition may only be granted if Petitioner can show that either the state court decision was

"contrary to, or involved an unreasonable application of, clearly established Federal law" or was

based on an "unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(1), (2).

 The Sixth Amendment right to counsel attaches at the initiation of judicial

proceedings against a defendant, "whether by way of formal charge, preliminary hearing,

indictment, information, or arraignment."  Kirby v. Illinois, 406 U.S. 682, 689 (1972).  "The

clear rule of Massiah [v. United States, 377 U.S. 201 (1964)] is that once adversary proceedings

have commenced against an individual, he [or she] has a right to legal representation when the

government interrogates him [or her]."  Brewer v. Williams, 430 U.S. 387, 401 (1977).

"Interrogation" for Sixth Amendment purposes may be defined differently than it is under the Fifth Amendment. See Rhode Island v. Innis, 446 U.S. 291, 300 n. 4 (1980) (" The definitions of 'interrogation' under the Fifth and Sixth Amendments, if indeed the term 'interrogation' is even apt in the Sixth Amendment context, are not necessarily interchangeable, since the policies underlying the two constitutional protections are quite distinct"). For Sixth Amendment purposes, "interrogation" occurs when law enforcement officers "deliberately elicit" information from an individual in this absence of counsel after the right has attached. Massiah, 377 U.S. at 206 (1964); Innis, 446 U.S. at 300, n. 4.

Here, Detective Cummings's testimony establishes that Petitioner had been formally charged with at least criminal possession of stolen property before Cummings retrieved Petitioner from Michigan. See H: 10 ("Q. And what was Mr. Quintero–what charge was he being taken back to New York on? A. Criminal possession of stolen property, I believe in the fourth degree, would have been an 'E' felony."); Appellant's Brief at 11 ("by the time he was brought to the Sheriff's Office for processing on the rape charges, Appellant had already been arraigned on the burglary and stolen property charges"). Thus Petitioner's Sixth Amendment right to counsel had attached at the time Petitioner was faced with the laptop he had stolen, and Cummings would have been prohibited from deliberately eliciting incriminating statements about this offense outside the presence of counsel.

Although, as noted above, neither state appellate court explicitly analyzed Petitioner's claim that his right to counsel had been violated, they did affirm his conviction, thus implicitly rejecting this claim. In affirming Petitioner's conviction, the appellate courts also implicitly concurred with the trial court's determination that "the statements made to Detective Daren Cummings by the [Petitioner] on each of those occasions were spontaneous statements, not made

18

in response to any questioning or interrogation." H: 36. The state courts' rejection of

Petitioner's Sixth Amendment claim does not run contrary to or unreasonably apply clearly

established Federal law concerning impermissible interrogation in the Sixth Amendment context.

The state appellate court decisions are silent on this issue, thus this Court assumes that the state

courts identified the correct standard for "interrogation" in violation of the Sixth Amendment,

namely, that law enforcement officers may not "deliberately elicit" incriminating statements

from individuals whose right to counsel has attached.  The intermediate appellate court did find

that the record supported the spontaneity of Petitioner's statement.  People v. Quintero, 898

N.Y.S.2d 489 (N.Y. App. Div. 2010).  A conclusion by that court that statements which were

spontaneously made were also not the product of law enforcement manipulation in violation of

the Sixth Amendment does not run contrary to or unreasonably apply the clearly established

Supreme Court law described above.

   This Court also cannot conclude that the state courts' rejection of Petitioner's Sixth

Amendment claim was based on an "unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  The only evidence presented at the Huntley

hearing, Detective Cummings's testimony, established that Cummings had asked Petitioner no

questions other than those necessary to obtain routine pedigree information, and that Cummings

had Petitioner wait within view of the evidence against him simply for the sake of convenience

during an unexpected delay, and that this was not for the purpose of eliciting Petitioner's

incriminating remarks.  H: 18 - 19.  Judge Dolan's factual finding that "there was no act by

Cummings or any other officer that could reasonably be inferred as inducing the statements

attributed to this defendant" is thus not unreasonable in light of Cummings's testimony. [12]

Because Petitioner has failed to show that the state court's adjudication of his Sixth Amendment claim fits within the exceptions listed in 28 U.S.C. § 2254(d)(1) and (2), this Court must defer to the state court's decision to reject this claim, and it should be dismissed.

### C. *Petitioner's claim that failure to suppress his January 3, 2008 statements violated his Fifth Amendment rights is meritless*

Although Petitioner failed to explicitly state a violation of his Fifth Amendment right against self-incrimination either on appeal or in the instant Petition, his Petition and Reply clearly imply this claim. In his Petition, Petitioner states his rights were violated when "Dutchess County Police placed (petitioner) in a position suggestive of allowing for a 'spontaneous statements'," which the Court interprets as an allegation that Petitioner's Miranda rights were violated, a claim under the Fifth and Fourteenth Amendments. Pet. at 4. In Petitioner's Reply, he states this violation more clearly: ". . . the Deputies had been previously notified that petitioner had invoked his Miranda protections, and there should have been no further discourse between petitioner and the police absent counsel after his return to New York State." Reply at 3. Petitioner then appears to state that Rhode Island v. Innis, 446 U.S. 291

---

[12]The lack of evidence to suggest Cummings intended to induce Petitioner to incriminate himself sharply contrasts with the scenario in Brewer v. Williams, 430 U.S. 387 (1977). In Brewer, defendant Williams, a deeply religious former mental patient, was suspected of killing the little girl he had been charged with abducting. 430 U.S. at 390 - 92. One of the detectives transporting Williams, who knew about Williams's mental illness and religious beliefs, urged Williams to share the location of the child's body so that she might have a "Christian burial." Id. at 393. The ploy worked, and Williams eventually led the detectives to the child's body. Id. The Supreme Court found that the detective had interrogated Williams for the purposes of his Sixth Amendment rights because he had "purposely sought during Williams' isolation from his lawyers to obtain as much incriminating information as possible," and had even admitted the strategy during trial. In contrast, no evidence was presented here to suggest that Detective Cummings had any such purpose in his dealings with Petitioner on January 3, 2008.

(1980), supports his claim.  Reply at 4.

Petitioner has exhausted this claim by satisfying each prong of <u>Klein v. Harris,</u> which requires (1) fair presentation of the legal and factual basis of a claim to (2) the highest state court.  667 F.2d 274, 282 (2d Cir. 1981).   The factual basis of the claim of a violation of Petitioner's <u>Miranda</u> rights has been fairly presented, as noted in Section B, <u>supra</u>.  The legal basis of this claim has also been fairly presented to the state courts.  Petitioner argued on appeal that to be confronted by police with the laptop he had stolen constituted "interrogation" in violation of <u>Miranda v. Arizona</u>.  Brief for Appellant at 13.  He also cited <u>Rhode Island v. Innis,</u> 446 U.S. 291 (1980), for its definition of "interrogation," and contended that Detective Cummings's behavior violated <u>Miranda</u> because it met <u>Innis</u>'s definition of interrogation.  Brief for Appellant at 13.  <u>Miranda v. Arizona</u> set procedural safeguards, including the right to counsel during custodial interrogation, designed to protect a defendant's Fifth Amendment privilege against self-incrimination; claiming violations of <u>Miranda</u> and <u>Innis</u>, its progeny, therefore sufficiently presents a Fifth Amendment claim.  <u>See</u> <u>Miranda</u>, 384 U.S. 436, 444 (1966).  Since it appears that Petitioner did present the same claims contained in his appellate brief to the Second Department in his application for leave to appeal to the New York Court of Appeals, the legal basis for this Fifth Amendment claim was also fairly presented to the highest state court, the New York Court of Appeals.  The claim of a <u>Miranda</u> violation is thus properly exhausted and this Court may reach the merits of this claim.

The deferential standard of review of §2254(d) applies to this claim as well, since it too was "adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254 (d).  Although the intermediate appellate state court did not cite <u>Miranda</u> or <u>Innis</u> directly, its brief opinion indicates application of <u>Innis</u> to the facts presented.  The Second Department's opinion states

that Petitioner's incriminating statements were not the product of the "functional equivalent of

interrogation," a standard taken from Innis, 446 U.S. at 300 - 01.  People v. Quintero, 898

N.Y.S.2d 489 (N.Y. App. Div. 2010).  Because Petitioner's Fifth Amendment claim was

adjudicated on the merits in state court, this Court may only overturn the state court decision if

the state courts' rejection of his claim was "(1) contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States; or (2) resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254

(d)(1), (2).

The procedural protections of Miranda v. Arizona apply in the custodial interrogation

setting, whether that interrogation consists of "express questioning" or its "functional

equivalent."  Innis, 446 U.S. at 301.  Interrogation in this Fifth Amendment context includes

"any words or actions on the part of the police (other than those normally attendant to arrest and

custody) that the police should know are reasonably likely to elicit an incriminating response

from the suspect."  Id.  In applying this objective test to police conduct, courts should consider

"the totality of the circumstances."  Acosta v. Artuz, 575 F.3d 177, 191 (2d Cir. 2009).  Circuit

courts have found that merely disclosing incriminating evidence to a suspect does not violate this

standard.  See id. at 191 - 92 ("Indeed, courts have generally rejected claims, such as Acosta's,

that disclosure of the results of a lineup or other inculpatory evidence possessed by the police,

without more, constitutes 'interrogation' under Innis," citing  United States v. Payne, 954 F.2d

199, 203 (4th Cir. 1992);  Caputo v. Nelson, 455 F.3d 45, 50 (1st Cir. 2006);  United States v.

Allen, 247 F.3d 741, 765 (8th Cir. 2001);  Easley v. Frey, 433 F.3d 969, 974 (7th Cir. 2006);

Shedelbower v. Estelle, 885 F.2d 570, 572–73 (9th Cir. 1989)).

The exceptions in § 2254(d)(1) and (2) are not applicable here, so this Court cannot grant Petitioner's application on this claim. The state court decision was not "contrary to" clearly established Federal law, since the Appellate Division, Second Department, identified and incorporated the relevant Federal standard, using the Supreme Court's language. The decision was also not an "unreasonable application" of clearly established Federal law. That is, in applying the test for interrogation from Rhode Island v. Innis to the record here, the state appellate courts' rejection of this claim was not objectively unreasonable; it was not objectively unreasonable for the state appellate court to conclude that Detective Cummings's act of placing Petitioner in the same room as evidence against him for a short period of time was not the functional equivalent of interrogation.

Indeed, the state court's rejection of this claim is in line with federal appellate courts' rulings in similar factual situations. See, e.g., Acosta v. Artuz, 575 F.3d 177 (2d Cir. 2009) (no interrogation occurred when defendant was informed that he had been identified in a lineup); United States v. Payne, 954 F.2d 199 (4th Cir. 1992) (no interrogation occurred when an FBI agent told the defendant that the FBI had found incriminating evidence at his house); Shedelbower v. Estelle, 885 F.2d 570 (9th Cir. 1989) (no interrogation occurred when a police officer informed the defendant that he had been identified by his rape victim). As the Second Circuit has noted, this synchronicity with "sister circuits" alone "'makes it more difficult to conclude that'" habeas relief should be granted. Acosta, 575 F.3d at 192 (quoting Jackson v. Frank, 348 F.3d 658, 665 (7th Cir. 2003)).

Moreover, although the factual settings in the cases cited above involve law enforcement officers orally informing defendants of the evidence against them, rather than placing a defendant in view of incriminating evidence as Cummings did to Petitioner, the effect is the

same, and the rationales underlying those decisions are persuasive here. These rationales also underscore the reasonableness of the state court's determination in Petitioner's case. This Circuit has noted that <u>Miranda</u> does not "compel a conclusion that *every* disclosure of an identification or of other inculpatory evidence constitutes interrogation under clearly established Supreme Court precedent," and that matter-of-fact disclosures of incriminating evidence do not generally rise to the level of interrogation. <u>Acosta</u>, 575 F.3d at 191. The kind of disclosure at issue here lacks the additional indicia of coerciveness necessary to render the state court's determination objectively unreasonable. Likewise, in <u>Shedelbower v. Estelle</u>, the Ninth Circuit found that informing the defendant that he had been identified by his victim did not qualify as interrogation under <u>Innis</u>, because that information did not "call for" or "encourage Shedelbower to make some spontaneous incriminating remark." 885 F.2d 570, 573 (9th Cir. 1989). Here, the state court's determination that displaying to Petitioner the evidence against him did not "call for" his ensuing incriminating comments to Cummings was not objectively unreasonable.

Finally, Petitioner has made no showing that the state court's decision was "based on an unreasonable determination of the facts in the State court proceeding." He has therefore failed to fit his Fifth Amendment claim into one of the exceptions to the deferential standard of § 2254(d), and this Court must defer to the state court's decision and dismiss this claim as well.

## CONCLUSION

For the reasons set forth herein, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed. As the petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. <u>Rodriguez v. Scully</u>, 905 F.2d 24 (2d Cir. 1990) (per <u>curiam</u>); <u>Alexander v. Harris</u>, 595 F.2d 87, 90 - 91 (2d Cir. 1979). I further conclude, and

respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.


Dated: August 17, 2012
       White Plains, NY


                                        Respectfully submitted,


                                        LISA MARGARET SMITH
                                        United States Magistrate Judge
                                        Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

25

The Honorable Cathy Seibel, USDJ
United States Courthouse
300 Quarropas St.
White Plains, New York 10601

Flaviano Quintero
#08-A-5105
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

Bridget Rahilly Steller
Office of the District Attorney
County of Dutchess
Dutchess County Courthouse
236 Main Street
Poughkeepsie, NY 12601